UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | CRIM NO. 4:07-399 |
| v. | § § | |
| RAYMOND MAYES, | § § | |
| Defendant. | § § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion to Suppress and Motion for Identification of Confidential Informant. After considering the briefing, the evidence presented at a hearing on the pending motions, and the relevant law, the Court finds that Defendant's Motions, Doc. No. 22 and Doc. No. 32, should be **DENIED**.

### I.   BACKGROUND

On July 12, 2007, Houston Police Department officers Christopher Cayton and William McPherson obtained a search warrant from Magistrate Eric Hagstette to search a residence at 3314 Drew Street in Houston, Texas. While executing the Drew Street warrant that same day, Officer McPherson alleges that he saw Defendant start to run towards a back bedroom and throw a clear plastic baggie to the ground. Officer McPherson arrested Defendant and searched him, locating a revolver in his back pocket. Officers later found the plastic baggie that Defendant allegedly threw to the ground, and it contained large chunks of a white rock substance later determined to be 26.3 grams of crack cocaine.

### A.   Affidavit Language

1

To secure the search warrant, Officer Cayton executed an affidavit stating that, within 48 hours of the application, a confidential informant (CI) had conducted a controlled buy at the Drew Street address. In the affidavit, Officer Cayton described the location as follows:

> There is in the City of Houston, Harris County, Texas, a suspected place and premises described and located as follows: 3314 Drew Street, Houston, Harris County, Texas. Said suspected place is described as: a one-story, wood frame, single family residence that is white in color. The residence is located on the south side of Drew Street just east of Tierwester Street. The numbers of the residence are not visible from the roadway. However your affiant located the property address utilizing Harris County Appraisal District records. Your affiant attached an appraisal district map . . . to show property location. Said suspected place is the first residence that faces towards the north traveling east from Tierwester Street.
>
> Said suspected place is in the charge of and controlled by each of the following named and /or described or suspected parties . . . to wit, an unknown black male, approximately 20 to 25 years of age, 5'10"-6'0", and weighing about 225-250 pounds.

(Doc. No. 32, Ex. 1, ¶¶ 1, 2.)

Officer Cayton also stated in the affidavit that he had met with a credible and reliable CI who has "provided narcotics information on at least three prior occasions that was proven to be true and correct and as a result of the information, officers have recovered narcotics." (Doc. No. 32, Ex. 1, ¶ 4.) Officer Cayton asserted that he met with the CI, searched him, and, together with Officer McPherson, took him to the 3300 block of Drew Street. (*Id.*) Officer Cayton states that the CI conducted a controlled buy at the Drew Street address. Officer Cayton asserts that he personally observed the CI walk to the residence at 3314 Drew Street. According to the affidavit, the following events ensued:

> The confidential informant knocked on the front door and was met by an unknown black male, who opened the door. The unknown black male invited the confidential informant into the residence. Once inside the unknown black male asked the confidential informant what he/she wanted. The confidential informant told the black male that he/she wanted a quantity of crack cocaine. The confidential informant gave the uknown [sic] male the U.S. currency. The

2

unknown male took a quantity of white rocks from a plastic bag that contained 20-30 more white rocks, and gave them to the confidential informant. The unknown male told the confidential informant to come back at any time for more crack cocaine.

The confidential informant then left the residence and returned directly to me. The confidential informant gave me the substance sold to the confidential informant by the listed unknown black male. The white rock substance sold by the unknown male to the confidential informant field-tested positive for cocaine content when I field-tested it.

(*Id.*)

Two months earlier, Officer Cayton submitted another affidavit to Magistrate Hagstette in support of a search warrant to be executed at a different address (2210 Pannell Street). (*See* Doc. 32, Ex. 2.) The Pannell Street affidavit contains word-for-word identical paragraphs describing the party suspected to be in control of the address and the details of the controlled buy. (*Id.* at ¶¶2, 4.) Both affidavits include the same misspelling of "unknown" in the same sentence in paragraph four.

## II.  ANALYSIS

### A.  Motion to Suppress

There is a presumption that an affidavit supporting a search warrant is valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). "A Fourth Amendment violation may be established where an officer intentionally, or with reckless disregard for the truth, includes a false statement in a warrant application." *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006) (citing *Franks*). "If an allegation of intentional falsity or a reckless disregard for the truth is 'established by the defendant by a preponderance of the evidence,' . . . [the court] must then excise the offensive language from the affidavit and determine whether the remaining portion would have established the necessary probable cause." *United States v. Cavazos*, 288 F.3d 706, 709-10 (5th Cir. 2002) (internal quotation marks and citations omitted).

3

Defendant argues that Officer Cayton intentionally or recklessly made false statements in the affidavit he presented in support of the search warrant for the Drew Street address. Defendant claims that much of the affidavit was simply language copied and pasted from the Parnell Street warrant. As a result, Defendant contends that the warrant was not supported by probable cause. Defendant claims that his arrest is invalid, and that the evidence seized from him should be suppressed because it was obtained in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

At a hearing on the pending motion, Officer Cayton testified that he typed out each of the relevant paragraphs in the affidavit that he submitted in support of the Drew Street search warrant and did not copy and paste the relevant language from the Parnell Street affidavit into the Drew Street affidavit. Officer Cayton further testified that the affidavit accurately reflects what he was told by the CI and does not contain any false information. Officer Cayton claimed that it was just a coincidence that the description of the individual and the controlled buy in both affidavits were exactly the same. When questioned about the misspelling of the word "unknown" in both affidavits, Officer Cayton represented to the Court that he often misspells the word unknown. Officer Cayton's statement that he just happened to misspell the word "unknown" in both affidavits in exactly the same location and his other testimony regarding the similarity in the language of both affidavits is simply not credible. The Court believes that Officer Cayton copied the relevant paragraphs from the Parnell Street affidavit and pasted them into the Drew Street affidavit.

Given Officer Cayton's willingness to misrepresent this information while under oath, the Court has very serious concerns about the credibility of Officer Cayton's other testimony, as well. Nonetheless, the Court must consider the possibility that at least some of the facts

4

contained in the affidavit reflect what actually occurred during the CI's alleged controlled buy, despite the fact that the language used in the affidavit was taken directly from the Parnell Street affidavit.

Officer McPherson corroborated several critical facts included in the affidavit, and Officer McPherson's testimony was credible. Specifically, Officer McPherson testified that he accompanied Officer Cayton on the day of the CI's controlled buy. Officer McPherson explained that the officers dropped the CI off near the Drew Street residence and saw him go to the front door of the house and briefly enter the residence. Officer McPherson further testified that he saw an African American male answer the door, though he could not see the man well enough to describe him in any further detail. Officer McPherson agrees that the CI came directly back to the officers and told them that he had purchased a quantity of what later proved to be crack cocaine. Officer McPherson admits that he does not remember the details of what the CI subsequently told the officers about the buy because he was not the case agent, and was focused more on matters of safety. Officer McPherson did testify, however, that he recalls that the CI said that he met with an African American male at the Drew Street residence, requested an amount of crack cocaine, and paid the man at the house for the crack cocaine. Officer McPherson also confirmed that the agents tested the crack cocaine and tagged it at the HPD lab after the buy.[1]

In summary, Officer McPherson could not verify that the CI said the African American male at the Drew Street residence was 20 to 25 years old, 5'10"-6'0", and weighing about 225-250 pounds. Nor could he confirm that the CI had seen the man take the crack "from a plastic

---

[1] Officer McPherson testified that he does not cut and paste information from one affidavit to another because, although there are often similarities in the drug activities at different locations, the differences generally make it impossible to use the same warrant for different locations. Officer McPherson was not involved in the preparation of the Drew Street affidavit, and could not testify to how Officer Cayton prepared that affidavit.

bag that contained 20-30 more white rocks." Officer McPherson did confirm, however, that the officers drove a reliable CI to the Drew Street address, saw him approach the house, and saw an African American male allow him into the home. He also confirmed that the CI returned with crack cocaine and told the officers he had purchased it from the man in the house.

The Government has not presented evidence otherwise corroborating the exact description of the African-American male or the amount of crack at the house. At the suppression hearing, Defendant presented evidence demonstrating that neither Defendant nor several other men found at the Drew Street address matched the description of the man described in the affidavit as participating in the controlled buy. The Government argues that at least one man who left the home in a vehicle and was later apprehended did at least come close to matching the description. (Gov't Ex. 6A). The Government further contends that the affidavit never purported to describe Defendant and argues that it is perfectly possible that the man described in the affidavit was not present at the time the search warrant was executed.

The Court is offended by what appear to be false representations made by Officer Cayton under oath. The Court agrees that Defendant has made a substantial showing that Officer Cayton may have recklessly included language taken straight from the Parnell Street affidavit in the Drew Street affidavit. Even if the Court were to find that certain uncorroborated details taken from the Parnell Street affidavit were untrue (i.e., the description of the African-American male and the amount of crack), and were to excise those details from the affidavit, however, the Court would find that the warrant was supported by probable cause. Officer McPherson's credible testimony confirms that the officers witnessed a CI make a controlled buy of crack cocaine at the address described with specificity in the affidavit. An affidavit containing such information is not a "bare bones" affidavit that "typically 'contain[s] wholly conclusory statements, which lack

6

the facts and circumstances from which a magistrate can independently determine probable cause.'" *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006) (citing *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992)). The remaining evidence in the affidavit would, therefore, have established the necessary probable cause for the issuance of a search warrant.

Because the search warrant was valid, the officers were lawfully present in the Drew Street address at the time they allegedly witnessed Defendant throw down a plastic baggie and run towards a back bedroom. Defendant's arrest and the subsequent seizure of the revolver and the contents of the baggie do not, therefore, constitute a violation of Defendant's rights under the Fourth and Fourteenth Amendments of the United States Constitution.[2]

### B. Motion for Identification of Confidential Informant

The Court does not believe that Defendant has demonstrated that the identity of the CI should be revealed or that the Court should call the CI for an *in camera* hearing to discuss the details included in the search warrant affidavit.

The Government has a "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." *Roviaro v. United States*, 353 U.S. 53, 60 (1957). The Court may require disclosure of a CI's identity, however, where such disclosure "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* at 60-61. There is no fixed rule:

---

[2] Defendant also alleged in his Motion to Suppress that the officers failed to read him his *Miranda* rights before questioning him. At a hearing on the pending Motion, Defendant failed to establish that the officers had actually questioned him, except to ask for his name and/or other identifying information. Nor did Defendant point to any specific statements that should be suppressed. The Government claimed that it did not intend to introduce any other statements at trial obtained from Defendant during or immediately after the Drew Street search. The Court therefore declines to reach the question of whether the officers violated Defendant's Fifth Amendment rights.

> The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.* at 62. The Fifth Circuit has clarified that the Court must consider: 1) the degree of the CI's degree of involvement in the crime; 2) the extent to which disclosure is helpful to the defense; and 3) the government's interest in non-disclosure. *United States v. Orozco*, 982 F.2d 152, 155-56 (5th Cir. 1993) (noting that the district court's decision to disclose the identity of an informant is reviewed for abuse of discretion).

The Court may conduct an *in camera* hearing "when necessary to balance the conflicting interests involved." *Orozco*, 982 F.2d at 155. "This limited disclosure of identity to the trial judge protects the government's interest in maintaining anonymity while also insuring the defendant's interest in having access to any witness who possesses facts which would aid him in his defense." *Id.* A district court is not required to hold an *in camera* hearing "whenever the defendant requests disclosure of the informant's identity." *United States v. Cooper*, 949 F.2d 737, 750 (5th Cir. 1991). The Fifth Circuit has ordered a district court to do so, however, where the record was silent about the informer's participation and the government's interests in resisting disclosure. *See United States v. Fischer*, 531 F.2d 783, 787-88 (5th Cir. 1976). Ultimately, the district court has discretion in determining if an *in camera* hearing is needed. *See United States v. Jackson*, No. 95-20942, 1997 WL 73735, at *2 (5th Cir. Jan. 21, 1997) (unpublished).

The Government argues that the CI did not witness, participate in, have discussions about, or arrange meetings with the Defendant related to the crimes that form the basis of the

8

indictment.[3] The CI was not present at the time the officers executed the search warrant. According to the Government, the CI therefore had no involvement in the actual crimes for which the Defendant faces charges, and the Government will not rely on the information provided by the CI in its case in chief. *See Orozco*, 982 F.2d at 155 ("If the informant's participation is minimal, the *Roviaro* balance favors nondisclosure.").

The Government also argues that it has a strong interest in non-disclosure. Officer McPherson testified, for example, that it is particularly difficult to develop informants in the Third Ward neighborhood of Houston, where the Drew Street residence is located. He further testified that disclosure of the CI's identity would cause the officers to lose a trusted informant who has been involved in a number of arrests. Officer McPherson noted that Officer Cayton is still using the CI. He added that disclosure also could result in serious retribution against the informant.[4]

Defendant maintains, on the other hand, that the CI's observation of alleged transactions at the Drew Street residence during the time surrounding the search warrant establishes that the CI witnessed other individuals—but not Defendant—engage in drug trafficking activity. At a hearing on the pending Motion to Suppress, Defendant also argued that disclosure of the CI or at least an *in camera* hearing may be necessary to clarify whether the affidavit underlying the search warrant contains false information.

Given the CI's lack of involvement in the crimes that form the basis of the current indictment and the interests identified by the Government, the Court will not require the

---

[3] Those charges include Possession of a Controlled Substance with Intent to Deliver; Possession of a Firearm During a Drug Trafficking Offense; and Felon in Possession of a Firearm. (*See* Indictment, Doc. No. 1.)

[4] Although an *in camera* hearing may be necessary under certain circumstances to protect a defendant's interests, the Court notes that even an *in camera* hearing is not entirely without risk to a CI. *See United States v. Thomas*, 348 F.3d 78, 85 (5th Cir. 2003) (noting that an individual who made threats against a CI had been able to describe what the CI was wearing at a prior *in camera Roviaro* hearing).

9

Government to reveal the identity of the CI. Nor does the Court believe that an *in camera* hearing is necessary to properly weigh the *Roviaro* factors. Furthermore, because the Court finds Officer McPherson's testimony credible and sufficient to establish that the search warrant was based on probable cause, the Court will not conduct an *in camera* hearing with the CI to question him or her regarding the facts alleged in Officer Cayton's affidavit.

### III. CONCLUSION

Defendant's Motion to Suppress, Doc. No. 32, and Motion for Identification of Confidential Informant, Doc. No. 22, are hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** this 16th day of July, 2008.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE